25-4045. Each side will have 15 minutes. Buenos dias. Good morning. May it please the Court. Mario Acosta, Jr., Pro Bono Counsel on behalf of the petitioner. Your Honors, I had prepared, obviously, to make several arguments regarding the issue of removability. However, I did not have time to go through  appears that the government has conceded that we were correct. So, the notice indicates that the government is withdrawing. And the government, through what I think it fashioned as a 28-J letter, abandoned this argument that is the basis of the NTA that was filed against your client. And I guess maybe I also want to know from you, even if we sort of withdraw this argument that your client was an arriving alien, what do we do with the overarching argument and this case, Duarte, which neither you nor the government raised with this Court that seems to be relevant for purposes of our analysis? Well, it's interesting. I tried to look that up because, obviously, the government's letter was on Sunday. So, I was trying to see if there had ever been a situation where the government just concedes something prior to our argument in that type of fashion. I did reach out to government counsel to see if a motion to remand might be perhaps more proper in this case, given the government's change in position. However, the government indicated they were not amenable to that. As far as how we treat the case, it would seem to me that the DHS being the case, the Department of Immigrant Mobility said that, you know what, you're wrong. You cannot classify me as an arriving alien simply because I traveled years ago. The Second Circuit's decision in Duarte specifically – I'm sorry, Fifth Circuit. The Fifth Circuit's decision in Duarte specifically cites the Emtina Law, which is what we cited. Now, obviously, it would have made more sense to have cited the Emtina Law and then told the Court, hey, your colleagues in the Fifth Circuit agree with this argument that we're offering. But because it was outside the circuit, and truthfully, I didn't know about the case, I probably should have done a better job of researching the outside circuit decisions that had addressed Emtina. But in this case, what we would argue would be that the Court should grant a petition for review, find that the government failed to meet its burden, and order that the case be terminated. I don't believe that the – I don't think we can order that the case be terminated. I think we can remand the agency for termination of proceedings. Correct. And that's what I mean. What I would ask the Court to do is what it did, for instance, in Bravo-Pedrosa, which was a case that we submitted in our 28-J letter. And in other cases – and I know it's not the same thing, but in – You can make the arguments that were made in Bravo-Pedrosa later if, in fact, the government seeks to refile. Correct. And you believe there is an argument for res judicata. But we wouldn't – Yes, Your Honor. We wouldn't, in this case, have any reason to make a determination or hold that a future NTA that the government might file is improper or barred. Understood. Bravo-Pedrosa was primarily based on another Ninth Circuit case, which was Ramon Sepúlveda. And that case involved specifically a government order to show – I'm going to stop you for a second. Sure. What I'd really like to understand is what basis would we have the opportunity or would we be required to consider adopting a rule like Duarte in this circuit if the government has withdrawn its argument that your client is an arriving Indian? Well, I don't think – I understand the question. I don't think that anything in the government's letter precludes the court from ruling on the merits of the case. So let me just get that out of the way. I understood the letter to mean that the government wasn't going to come here trying to defend its position that it was counter to Duarte. My argument would continue to be that whether you embrace the Duarte decision, whether you rule on your own, that MTNA is what controls with or without Duarte being a case that mirrors what the court wants to decide. From the beginning, the position from us and the position I'd like the court to take is that someone who travels on advanced parole should not be considered to be an arriving alien when they've already entered because MTNA says you go back to your original status. Now, Duarte took a step further. Can I talk about that?  I find this a really interesting and challenging question. So setting aside travel and going and coming back, a person on TPS status – okay, so let's say the person comes to the country illegally and at some point is discovered while here and then they're granted TPS status. What are they considered in terms of their entry status? I understand they're not admitted. TPS doesn't give them admission in the technical sense, but – And we're talking about before they've traveled on advanced parole, right? Correct. Well, I guess at that moment, as far as I understand it, TPS essentially freezes their status, right? It freezes them to the extent that we're not going to remove you. We're just going to allow you to remain in the country for an indefinite period of time that is reviewed on a yearly basis. But at that moment, they're not granted any legal status. There was a time when they were considered to be admitted, right?  So what are they freezing? What is that person? They're not an arriving – are they an arriving alien? Is that what we're freezing? No, no, no. I don't see it that way. What I understand is that – and this is how I would offer my response to you, Your Honor. I believe that essentially that individual, let's assume, entered without inspection, right? The minute that you're granted TPS, it freezes you to the point that you are precluded from being penalized for the illegal entry, right? Because at any other time, if you enter the country illegally, you're subject to being removed, right? I mean there's no question about that. TPS, I understand it to mean basically we're not going to give you any consequences for the illegal entry for a specified period of time. Then if you travel with advanced parole – Well, before you get to that, so let's say that that person – again, setting travel aside. So that person who has TPS status, the TPS status is then revoked, and they go back to you came into the country illegally. That was my understanding. Then the government decides to pursue that and bring a removal proceeding. Which box on the form of the NTA gets checked? It would be – Entered without inspection. Exactly. Entered without inspection. So the three are arriving alien, deportable, admitted but deportable for the reasons that follow, or entered without being inspected or admitted. So is your position then that in this case, if the government has a basis for seeking to remove your client, that that's the box they needed to check on the form? Yes, prior to my review of Duarte. So I will be perfectly honest with the court. My position was that the government at the time was abusing its discretion and its power by classifying him as an arriving alien because without getting into the – I don't know why you want to couch your argument in Duarte. We're not bound by Duarte. No, understood, Your Honor. But what I mean by Duarte is that, in my opinion, Duarte seems to give a TPS recipient who travels with advanced parole an added bonus, which is now they're considered – I mean really your point is that he was not an arriving alien.  Whether or not he was supposed to be deemed entered without inspection or this other status that he would have received. Admitted, yes. Yes. It doesn't really matter for purposes of this case. Correct. It doesn't matter. So bottom line is that what the government put all of its eggs in the basket. The hand that they played in the casino was he's an arriving alien. We challenged that. We briefed it. The BIA had an opportunity to say, no, we think you got it wrong. We think we need to send it back. I mean Duarte had been decided in 2022. So despite the fact that we didn't raise it, I'm assuming the BIA would have known about Duarte. But the BIA said, no, we agree with the government. We agree that he's an arriving alien. We don't care about Emtina because we're going to say that the USCIS policy that you cited, we're not even going to look at the Emtina law. We're just going to say that USCIS policy doesn't control the board's decision making or doesn't have any authority over us. Going back to your original question, Your Honor, I would argue that if the court grants the petition for review, assuming that the court agrees that he was not an arriving alien, the only remedy that the court should really focus on offering would be to order the BIA in a limited remand to terminate proceedings. Because my concern is exactly what the government argues in the second part of its brief when it tries to convince the court that a remand would be futile because at the end of the day, the government has this authority to just amend the NTA. I don't read it to be that way, and I would be concerned about giving the government the power to just simply waste judicial time and resources on one theory. And then if you're unsuccessful at the Ninth Circuit or at the circuit court level, just letting the government have a second bite at the apple. And I realize that Bravo Pedrosa dealt more with the second initiation of a proceeding, but I was citing it more for the argument regarding not allowing the government to have a second bite at the apple. I think that's the argument makes a lot of sense, and I understand why you're making it and it has some appeal. But the regulations do say that at any point in the proceedings, the government can amend or change their allegations. And so so what do you want us to just as a matter of discretion, say that in this kind of a circumstance, it shouldn't apply because it looks like the government is games doing some gamesmanship? No, Your Honor. Respectfully, I think that the court needs to consider the full language of the regulation. The regulation says, quote, during the pendency of proceedings. Now, I will agree with the court that pendency would include the BIA. So you're before the immigration judge or even when the appeal was filed. But is it right now? No. Aren't we still in? No, no. The minute that we have a final order of removal, that's why it's called a final order of removal. That's why there's a separate statute that gives this court jurisdiction to consider this case. I believe at that point the regulation no longer applies. Now, if the court was to make the decision to remand the case back to the BIA. Even if we accepted your argument, if you want us to remand, you want us to remand to have the agency terminate things. But on remand, then the proceedings are have woken up again under your definition. But I believe the Ninth Circuit Court has authority to limit the scope of the remand. Same way that the BIA can remand something to an immigration judge. What would happen if we remanded but without instructions to terminate the proceedings? Then would you agree with Judge Forrest's sort of, you know, with the language that she cited with respect to the pendency of the proceeding? Would there be a live proceeding again on remand? I would have to admit yes. And then at that point, if the government was to. Why couldn't you then make whatever arguments that you're making to us on remand? It could be. I mean, you could try to make the argument that at that point there's a due process violation in the filing of the IT61. Or get the agency to, as a matter of discretion, decide, yep, the government is playing games here and I'm not going to allow it. Understood. But I think under the specific facts of this case, because the agency's already played their hand, right? I don't think that – I think that it would be fundamentally unfair to Forrest, this petitioner, to have to once again either go back to the immigration court because. Really, the reason I'm sort of pushing back a little bit on your – on the premise is let's just assume for purposes of this argument that the government did not withdraw. And we'll ask the government questions about this. I have a lot of questions about why they've done what they've done. But let's assume that they did not withdraw their argument with respect to the arriving alien box that they checked. We would remand to the agency if we were to adopt something similar to – essentially to say that the MTNA trumps the regulation. It applies. He gets either the status as an inspect and admitted, which was the status he had prior to his travel. We would remand to the agency. And I guess what I would like to know from you is what was your argument for limiting that remand to a termination of proceedings even under that context? And let me answer the question with the following. Our opening brief and the conclusion did specifically ask the court to remand only to terminate to the BIA. So it wasn't as though we were open to the idea of remanding it to reconsider this issue because I think it bears – I understand. I'm asking you for your authority for that relief that you're requesting. I'd have to follow that probably more in the context of a 28-J letter. But what I would ask the court to consider is in the context of the criminal cases where an immigrant challenges that their conviction is not a deportable offense, this court has limited the government's ability to be able to submit more evidence if they don't meet the modified categorical approach in respect to a particular conviction. Or if something just isn't a deportable offense, you're not going to allow the government to just now go back and say, oh, well, wait a minute. I could have used this other conviction as a deportable offense. Let me argue it. I haven't fully investigated what we have done in that circumstance and I don't – what you're describing I could see as a plausible thing we have done. But I do have a practical question about that, and that is what – at the end of the day, what does that do? Because if the government has a different basis to charge this person as removable than what they have charged, they're just going to do that in a new proceeding. So we remand and say, allow them to do it in this proceeding, or we don't, and then they file a new proceeding. And in terms of your client's position, there's no benefit to your client in terms of which path that goes down because either way, the government is going to pursue whatever the other argument that it has is. But respectfully, Your Honor, if we go down that road, at the very least now as we were discussing earlier, you allow me – you allow Petitioner to use Bravo-Pedrosa because there is the doctrine of collateral estoppel. There is res judicata. The issue was his alienage. The issue was his removability. We were the prevailing party. Government doesn't get a second bite at the apple. At the very least, even if the MTA, the second MTA, hypothetically speaking, is filed, we have an opportunity to move to terminate under Bravo-Pedrosa. There's Ninth Circuit authority that would support our position, and if the judge disagrees, the BI disagrees, we're right back here asking this court whether or not to honor one of its colleagues' published decisions in Bravo. So again, it puts him in an advantageous position because ultimately he would be the prevailing party. He's the one that from the beginning said, you guys are doing it wrong. And I think it bears repeating. The government could have easily corrected this at any point. This argument was exhausted to the immigration judge. The government could have said, you know what? Maybe the path of least resistance is to stop pushing this arriving alien, this kind of ridiculous concept that somebody that was paroled in five years ago is still an arriving alien. Let's go with the entry without inspection. They could have even alleged it as an alternative basis, said, hey, we're going to argue this one and this one, and then we hash it out. They never did, never did before the BIA, and I think it would be fundamentally unfair to let them do it. And I know I'm over my time, so I'll hold the court. I'll still give you a minute for rebuttal, but let's hear from the government.  Good morning. May it please the court. Petitioner entered without inspection in 1998. Petitioner pled no contest to meeting a minor for lewd purposes in 2023. Counsel, I'd like to ask you about whether it's very troublesome to me that the government does not cite a case. I know it's outside the circuit, but that sort of deals with the very sort of interpretive question that we are having to grapple with in this case with respect to the antenna. We raised this. We asked counsel to come to argument and be prepared to argue the case. And in response, the government files a 28 J letter that essentially withdraws the entire basis for what this case was brought in the first instance. And that is it really is very troubling to me. So I'm hoping that maybe you can start by addressing that issue. The reason I filed the 28 J letter was because the United States took the opposite position in the Fifth Circuit with dirt with Duarte and in the 11th Circuit. Government aware, it sounds to me like the government's well aware of this case and understood because you did already make the opposite argument than you did in Duarte when you filed your answering brief in this case. So at that time, the government's aware that it has this other case and another circuit, and it took a completely contrary position. Yet it didn't make this court aware of that fact. So I am not it doesn't make the situation any better that once we discovered the case on our own and brought it to your attention, then you're going to say, OK, now we're taking a contrary position. So we should withdraw our argument. I was not aware of the Duarte case before the court brought it to our attention. OK, and so tell me why this case is not appropriate for mediation or for resolution, consistent with what your friend on the other side talked about, which is why wouldn't the government agree to a remand in this case based on the fact that. The removal proceedings were based on this. Assertion that petitioner was an arriving alien. You're now saying that he's not an arriving alien, so that might mean that he entered without inspection. He's inspected and admitted if we sort of use the Tina interpretation. Why wouldn't the government agree to a remand in this case so that it can check the right box and pursue whatever other removal or deportability case that it wants to? The government would not agree to remand because it is undisputed that petitioner entered the country without inspection. But the NTA said that he was an arriving alien, which you now concede is erroneous. Correct, but the government would just refile the paperwork that he was a. So can you cite me to a case that says that we do not in this particular case remand because the government believes that it would be futile? The determination of whether it's going to be futile is for the court to make and petitioner. I don't have a case. You don't have a case where we talk about sort of futility as the basis for essentially denying relief to a petition who otherwise has met their burden on appeal. I would point the court to Chenery and the futile futility exception. I want to make sure I understand your argument. Your argument is that we shouldn't remand for any reason at all, that we should just decide this case on a whole different basis than was charged. Our argument is that remand would be futile because the facts in the case show that he is an alien without he entered without inspection. Well, that cannot be true. I mean, that cannot be true. Like these proceedings start with basically a charging document and the government states the reason why the proceedings are legitimate. I would understand if you were here saying that you shouldn't remand for directing the agency to terminate proceedings and instead you should remand to allow the agency to consider a new basis for removing this guy that the government might have. I could understand that. But you're you're seriously here today and asking us to terminate this case on a ground that the government didn't charge. The BIA had the factual finding that and petitioner does not dispute that he entered without inspection back in 1998. If you're not willing to. To. Agree with us on that argument, we think as a secondary position, remand would be appropriate without an instruction to terminate. I think it would border on absurdity for the fact that petitioner could never be removed because they got the board made a mistake in these proceedings. I don't know if it's the board that made a mistake. It's the government that made a mistake. I mean, you've conceded that the ground that was alleged for removability is invalid. There are the regulations state that the government and the Board of Immigration of Appeals can amend the can amend that the charging paperwork to add or substitute charges. But you haven't done that yet. So don't you need at least a remand to do that? I. The remand would not be necessary because. There is no dispute that he entered illegally. He entered without inspection. Why didn't the government use that as the basis for removability in the first instance? Well, Your Honor, the second part of the brief says that if you disagree with us on the or if the arriving alley, we don't get to do it all over again. The government identifies the basis as Judge Forrest plainly stated for the removability. That basis that the government identified and selected was that the petitioner was an arriving alien. I'm asking you why the government made the decision to do that as opposed to checking the box that said that he had entered without inspection. The the Board of Immigration Appeals. No, I'm asking about what the government's decision for the basis that it identified for the removability of the petitioner. Not the finding or any commentary that the BIA ultimately made. Because the BIA ultimately held that petitioner could be removed for the basis set forth in the NTA, which you're now conceding was an error. So why not have selected the basis that you're now arguing you would have that you would recharge. If you had the opportunity to do this again. Why not do that in the first instance? We would welcome the opportunity to fix the mistake. The reason. The. The. I can't speak to why the the Board of. The government followed the defended the Board of Immigration Appeals decision, which turned out to be wrong. So is there any reason that we shouldn't write a published opinion explaining that that board decision was wrong? I mean, you've basically conceded that the argument in your brief and that the board adopted were wrong that that argument was wrong. And you've also told us that you didn't know. About it being wrong because we didn't have a case that said it in our court. So is there any reason we shouldn't have there be a case now that we write today that says this argument is wrong? I don't I don't think that that would be necessary. I think that the the Duarte opinion, which struggles with the merits of of this issue is a complicated matter, which had a dissent. And I think without properly briefing without a full briefing of this matter, I don't think that the published opinion would be helpful. But you conceded in your letter that you don't think the counter argument is one you are adopting or adhering to. I guess now I'm really confused your position. I mean, are you saying now you don't agree with Duarte? We agree with Duarte. That's why we filed the 28th. Are you saying that you only agree with Duarte when it in yours to the benefit of the government? Your Honor, it would not or your honors, it would not be if the if the court wants to write a decision that says that a person is not an arriving alien. With with Metina and TPS, the government agree in USCIS agree with that with that decision and it would not be necessary. Wait, I think you just sort of said contrary things. I mean, I am asking you why we shouldn't write an opinion like that. And I'm not understanding your answer. The opinion that you write would be consistent with the way USCIS is doing things now. Except now with this. Except correct. So you don't want us to write an opinion on the assurance that the government is going to ask and act consistent with the opinion that we might write. I'm not. Basically, it's just unnecessary. We as the government are going to do things this way anyway, so you don't need to write an opinion and tell us to do it that way. But that's that. I'm sorry. Go ahead and answer the question. I'd like to hear your answer to this question. USCIS policy is that we would not treat these people like these applicants as arriving aliens. But you did in this case. And you did in this case even though the government took a contrary position in the Fifth Circuit in a different case where the interpretation that was helpful to the government in that case. So it sounds very much to me like what you're saying is we don't want you to write an opinion because to the extent that we can get away with doing what we did in this case, we'd like to be able to do that without a case directly on point. But when brought to our attention, we'll concede that that's not the right way to do it. Your Honor, the reason why I filed the 28-J letter is because I was because of the inconsistencies that we were doing, that we were arguing one thing in front of the Ninth Circuit and different in front of the Fifth Circuit. I tried my best to resolve that inconsistency by writing the letter. But once you withdraw the argument that's contrary to Duarte, I think you're basically conceding Duarte is correct. So I'm not understanding why we as the Ninth Circuit shouldn't write an opinion that basically follows the same reason as Duarte. Your Honor, I think it'd be fine for you to – I can't – I don't have the authority to speak on that matter. I think that would be fine for you to write an opinion saying that Duarte is correct. And then once we do that, though, you want us to nonetheless say that the petitioner loses because of this other basis that could happen instead of remanding at the end of that opinion. That's our position, Your Honor. Is there any more questions? Thank you for your candor. Let's put a minute on the clock for rebuttal. Your Honor, I'd like to answer your question regarding the arriving alien issue at the time. At the time, by classifying Petitioner Mr. Izaguirre as an arriving alien, he would be ineligible for bond. So that's why we were so insistent that he was not an arriving alien because then at the time he might have been eligible for bond. Of course, the conviction and the vacatur, all of that, that's a separate issue. But that was the primary reason why we were so adamant that he was not an arriving alien. But that's also why I believe the government was pushing the arriving alien charge because aside from their own mistaken belief about whether or not he was an arriving alien, it also made sure that Petitioner would not be eligible for a bond. So wait. Is he still in custody now?  He was deported now. Yeah, he elected to be deported because at that point he had been denied release and he was just tired of being in Adelanto. He had been there for almost two years. This may be an unfair question and you might not know the answer, but are you aware of or are you handling other cases in which the government has in fact charged in a removal case somebody as an arriving alien who had TPS status? I can tell the court candidly. Personally, no, I don't have another case, but I know for a fact of two other ones. And the only reason why I know that is because the way that I came up with the Emtina argument, I wish I could brag and say I did my own research. A colleague that appeared at the Adelanto court actually made the argument for his client. The judge rejected it. But I remember when I heard Emtina, I looked it up and I saw the law and I saw the USCIS policy. And that same hearing, another attorney said, you know what, Your Honor, I'd like time to make arguments consistent with the Emtina law that my colleague just cited in his case. So I know for a fact that during that time there were at least two other cases at the Adelanto court where the government was pushing that someone who had traveled with advanced parole was an arriving alien. And I know that one of them was a DACA recipient, which I thought was fundamentally unfair because the DACA recipient had just gone to Mexico, I think, and they had charged him as an arriving alien. So to answer your question, yes, which is why consistent with my colleague. Can I ask if your client is no longer in the country now, I'm a bit confused about this whole remand situation. Like what could happen next that could help your client at this point? If the court was to, for instance, grant a petition in order that the board find that he was not removable as charged, there is a process by which we could reach out to ICE and CBP to have them be readmitted into the country. And then once he's back in the country, then, of course, there is the possibility of the government filing a second notice to appear, which I've already addressed what arguments we would make. But I have had cases where immigrants were deported and then were the prevailing party before this court. And then it's a little tricky, but there is a way to get them back into the country. Would that procedure be available regardless of what we say about the remand? Like if you win this appeal here, this petition for review, if we rule in your favor and remand, will you be able to trigger the procedure you're describing, whether we say remand for further proceedings or remand to terminate? I mean, either one? No, because obviously if you say remand for further proceedings, then we leave open the possibility of an I-261 being filed. And it bears to – I think I need to emphasize the board can't make a decision on an I-261 because you have to first deal with an I-261 charging document at the pleading stage. You can only comply with the pleading stage before an immigration judge. So what would possibly happen would be the government would file an I-261. The board would then remand this back to an immigration judge. And then I would have to find a way to get respondent back into the country to appear for court. But then, of course, then we'd be dealing with is that I-261 proper? Can I request that it not be filed? That's why I'm pushing for the case to be terminated. Let me ask you this, and I had asked you earlier for your authority about sort of what we would look at for purposes of granting the relief that you're seeking. So HCFR 1003.18d1a is the provision that says an IJ is required to terminate proceedings where no charge of deportability, inadmissibility, or excludability can be sustained. Can you make the argument that you satisfy that standard? Or by saying that your client is either entered without inspection or inspected and admitted, is there still a basis for the government to sustain a charge of deportability, inadmissibility, or excludability? What it would come down to, Your Honor, is that regulation and how it would compete with the regulation that gives the DHS the authority to file new or amended allegations at any time during the pendency of the proceedings. And I know that the board and even this court has interpreted the term pendency of proceedings to include when something is pending with the BIA. It's a pretty broad interpretation. I understand it to end the minute that a final agency BIA order of removal is issued. That's why I'm insisting that the government shouldn't get a second opportunity because, as the government's already made abundantly clear, the way they see this case is, well, even if we lose, we're going to deport him anyway. We'll just file these other charges, and there's nothing you can do. And you're saying that there might be something that you can argue, even in that context? Even if we don't instruct the BIA to terminate the proceedings, you're saying that you might be able to argue that there's not a pendency of the proceeding or that there is a collateral estoppel issue? I could try to make a million arguments, but the reality is that because of the way the Supreme Court, particularly in Pereira, has kind of emphasized what the plain language of a statute is and how you're supposed to just read it as it is, the DHS statute gives it all the authority it needs to file an I-261 to file new charges. That's why I'm so scared of going back to the BIA or to the immigration judge because you're forcing petitioner to face a giant. And in this case, because of the reasons that we've pointed out, that the government basically abused its discretion and charged somebody in a way that they weren't supposed to be charged because it was more advantageous to the government by preventing him to apply for bond. If the court gives anything other than a limited remand, the government is going to seize that opportunity to file a new charging document – I'm sorry, to file the I-261 and to correct its mistake, and that's what it comes down to. If we all agree that the government is conceding it made a mistake, I would beg the court do not give the government an opportunity to correct its mistake because it passed up on those opportunities before the immigration judge and before the BIA. That's why I'm asking the court to terminate proceedings or to, better yet, grant a petition but specifically with the instructions the same way that the court would if my client was being charged as deportable based on a conviction and the court concluded that the BIA got it wrong. The court would not give the government a second opportunity to try to correct its mistake and try to file some new evidence. So that's what I'm asking for. And if there's nothing further, thank you. Thank you both sides. This case is submitted and we're adjourned for the day. The court for this session stands adjourned.
judges: FRIEDLAND, FORREST, DESAI